Good morning. May it please the court. My name is Eitan Kasteljanich. I'm representing Dezarie Taylor in this appeal. Taylor has been disabled since April 2007 by a combination of physical and mental impairments. I'd like to start by discussing the errors involving the mental impairments. Taylor was evaluated by two psychologists, Dr. Brown and Dr. Losey. Both of them concluded that she had some marked impairments in her mental functioning. She was also received mental health treatment for many times over the course of many years. The file is full of hundreds of pages of evidence from that treatment. One of her treating therapists was a Ms. Hansen, and she also completed a functional assessment form in which she opined that Taylor had many marked functional limitations. The ALJ rejected all three of these evaluations. When you say rejected, did the ALJ say that I'm giving them no weight, or did the ALJ just say that to the extent they differ with other evidence in the record, I'm discounting that evidence? He essentially rejected them almost completely. Did he, or were there statements in the record, I reject this witness and everything this witness said, or does he basically say to the extent that this witness said this, it doesn't seem to be consistent with the other evidence in the record, and therefore I'm discounting it? He used more the language of I'm giving, for example, with Dr. Brown, let me give you different things with the different people. So, for example, with Dr. Losey, he said he was giving little weight to her opinion. Right, so that's not quite rejected. It's simply looking at it in light of other evidence and says, here's why. Well, the meaningful distinction here isn't what he says. If he says little weight, some weight, lots of weight, what's important is whether or not the limitations that were described by the psychologist actually ended up in the residual functional capacity assessment, and they did not. And so that's the thing. So, for example, with Dr. Losey, he said I'm giving little weight to her opinion, and part of her opinion was that Taylor could not handle stress of a normal work environment, and the reason, so then you have to look at, well, did he give a good, if he gives a good reason for rejecting, or for giving little weight to an opinion, then that can be acceptable, but his reasons, that's what it really boils down to, is the reasons he gave, and with Dr. Losey, his reason was, quote, because there is evidence that the claimant's anxiety symptoms were and are mild or not present at all. That statement, that was his reason for rejecting Dr. Losey's opinion, and that reason is not supported by substantial evidence. There are lots of treatment notes that show that she has lots of clinical findings, and her symptoms... But you have an obligation to do more than to show there is evidence going your way. Don't you have to show that there's insufficient evidence supporting the ALJ's conclusion? I have to show that, well, in this case, when he makes a blanket statement that her anxiety symptoms were and are mild or not present at all, if I show that that sentence, that reason, his reason for rejecting the opinion, is not supported by substantial evidence, then he can't reject her opinion. He can't... His findings have to be supported by substantial evidence, and it's not enough... You know, he says there's no evidence. If he had said, well, some of the treatment notes say she's doing okay, and others say she's not doing so well, and I'm deciding that, on the whole, she was doing okay the whole time, that's an explanation that perhaps could pass muster, but that wasn't his explanation. He simply said, there is evidence, there's some evidence, that sometimes she was doing better. That's not good enough, because she had an impairment that fluctuated in severity. She was getting treatment the whole time, and some of his reasons, it gets into the analysis of her testimony as well, where he rejected that because she was sometimes doing better, and then other times she was doing worse, and you can't just look at the treatment notes on the day she's doing better, and ignore... A disability that lasts, or is expected to last at least a year, and so if during that year there's times that she doesn't have the disability, or is doing well enough that she can do light work, then you don't have, you haven't proven the disability that's lasted, or is expected to last a year. Taylor has not worked beginning in April of 07, when she was injured on the job, back injury, and there's never been a time since April of 07 throughout the relevant period, which is through the date of the ALJ's decision, June 2011. There was never any time period, any extended time period throughout, that's over four years, where she was functional, physically and mentally, and able to perform any type of full-time work. Momentary improvement does not pass muster. That's not enough. You've got to actually... anxiety. Well, in this case, it's... Dr. Losey only saw her once, right? Right. And Dr. Brown only saw her once. That's correct. And then her treatment providers saw her repeatedly, and then after many, many visits with her treatment providers, one of her treatment providers, Ms. Hansen, based on all the ongoing treatment, opined that she had overall marked impairment. Even though, at the same time, Ms. Hansen was encouraging her to try to get over. She was trying to get her well. So she was encouraging her to drive a little further from your house each time, start going to stores again. She helped get her in a good direction, and she was doing... over the course of this entire time period, she showed some significant improvement, but her hands were still a problem, her carpal tunnel syndrome. I have to bounce it back to the physical as well here, because the same kind of problem arises where there's a doctor, Dr. Halbrun. Social Security told her to go see Dr. Halbrun. He's going to examine you. He examined her, and he found that she could only lift, I think it was up to three pounds in each hand. She couldn't... and it was because of both her inability to be on her feet, because she was having foot problems, and it was because of carpal tunnel syndrome. And that's been an ongoing thing in this file, is the carpal tunnel syndrome. The ALJ rejected Dr. Halbrun's opinion, gave it, you know, once again, gave it... I'm not going to look up the exact language, but it was, once again, he essentially rejected the opinion about those limitations, and instead was giving significant weight to the opinions of non-examiners. And this is a real problem in this file, because the non-examining physicians, Dr. Hoskins and Turner, he said, I'm giving significant weight to their opinions, but their opinions were nothing. Their opinions were a cipher. Their opinions were affirmed. That's it. One word. What they'd actually done is, the opinion that the ALJ quotes was actually written in its entirety by a non-physician, Krista McDougall. She's not a physician. She reviewed the file back in February of 2009, and she said, well, this is what I think her limitations are. Dr. Hoskins said, okay, name on it. Dr. Turner, a few months later, okay, name on it. That's it. That's the extent of their opinions. And under Social Security law, the opinion of an examiner, such as Dr. Heilbrun, is entitled to more weight than the opinion of non-examiners, and it's certainly entitled to more weight than the opinion of a non-examining, non-physician with no medical training that we know of. The other thing that some of the reasons that the ALJ gives for rejecting Dr. Heilbrun's opinion, he looks at earlier evidence from two doctors who examined her as part of her workers' comp claim, which involved a back injury from lifting heavy boxes, and those doctors diagnosed the carpal tunnel syndrome, but they gave no opinion about limitations because that wasn't their role. That wasn't their job. No one asked them. They couldn't do it. They were evaluating her work-related injuries only. So that evidence doesn't justify the rejection. Another reason that ALJ gives for rejecting her description of her testimony about her limitations is Social Security sent detectives to investigate her, and in the investigation, according to the report, they observed her. She had children. They observed her opening a box of cereal. They grabbed the box of cereal, breaks the seal, and she also used her telephone to dial a number. She never claimed she couldn't do anything with her hands. There's no evidence that she ever asserted that. There's no evidence. The problem is she could use her hands occasionally. She couldn't use them frequently, and so the evidence, basically, the detectives watched her and watched her. Nothing that they said is actually meaningfully inconsistent with her own testimony about her limitations. I would like to reserve some time for rebuttal if you don't have any other questions. Fine. You can sit. You can reserve all that five minutes. Let's hear from the government. Good morning. May it please the court. Jeff Staples on behalf of the Commissioner of Social Security who requests that you affirm the District Court's judgment because the ALJ's decision is supported by substantial evidence. I'd like to correct something in the record regarding the functional assessment by Dr. Bays and Dr. Zoltani who evaluated Ms. Taylor in conjunction with her unemployment claim. They were asked whether she had any limitations. The questions are not restricted to the impairment that she showed up with. They were asked, does she have any limitations that would preclude employment? Did they address the question of anxiety? So is there anything in their report that Dr. Zoltani's a neurologist, right? Correct. Is anxiety something that he would ordinarily look at? No. It's fair to say that their assessments are limited to the physical capacity. So asking if she had any limitations doesn't really exclude the mental limitations, right? No, but it does encompass all the physical impairments that she claims. It's not that they were only looking at her back and so they just ignored any other possible limitations. They were asked, does she have any limitations? And I think it's safe to say that that means physical in the context of this evaluation, but they said no limitations. So there's several examining physicians that contradict Dr. Heilbrunn's assessment that she was limited to lifting three to five pounds. There's Dr. Bayes, Dr. Zoltani, her treating physician, Dr. Johnson, said she could perform light work. Other treating physicians, or excuse me, a treating podiatrist also said no limitations. There's really a wealth of evidence on the other side of Dr. Heilbrunn's assessment and that limited weight to Dr. Heilbrunn's assessment. With regard to Drs. Brown and Losey, I think Judge Ebel hit the nail on the head when you pointed out that the question is not could there be some evidence that a different fact finder might construe a different way? The question is, was there substantial evidence in support of the ALJ's finding? And in this case there was. Regarding Ms. Taylor's anxiety, there are references... Could you just explain, what was the theory of her case regarding anxiety? I mean, what was her general... Her general theory of the case was that her anxiety and agoraphobia prevented her from leaving the home at least often enough so that she would be unable to work. So, however... And where did the doctors come out on that? Well, Drs. Brown and Losey who examined her said that that was largely correct, that she had various marked limitations, as did Ms. Hansen. Marked limitations in her mental functioning. However, the treatment records told a different story, and this is throughout the treatment records. At page 875, she said she had all but overcome her agoraphobia. At page 645, she had zero anxiety. At page 575, she had only mild anxiety. But doesn't the record really reflect that it sort of waxed and waned, you know? There were times when she was okay. There were other times when she was in bad condition, couldn't function. Well, I guess the question is, does this evidence constitute substantial evidence to support the ALJ's decision to give less weight to the opinions of Drs. Brown and Losey? And in this case it did, because they said she had marked limitations across the board. That there's no indication within their assessments, and how could there be as a one-time examiner's, that her symptoms were really going up and down. The waxing and waning wasn't the waxing largely related to the domestic conflict that she had. That's absolutely right, Your Honor. Once that situational thing happened, her psychological situation, it was not like a manic depression that may go up and down. This was kind of episodically related to an event. It was related to difficulties with her family, and the ALJ pointed to ample evidence that that was really the issue that she was facing, was a difficult family situation. But a difficult family situation is not a medical impairment. And so her anxiety really showed that when she wasn't facing difficult family situations, she had no problems. So it can't be said that this medical impairment was the thing that was causing her stress. So the ALJ was entitled to rely on these myriad instances in the record where she's doing just fine, and say, you know what, I can't really square this record with the across-the-board marked limitations that Drs. Brown and Lozzi described. What's also really significant about this case is the wealth of evidence suggesting symptom magnification. Not one, not two, but three different examining doctors use the phrase symptom magnification in their reports. Dr. Bayes said symptom magnification profound and obvious. Dr. Soltani said significant magnification in subjective complaints. And Dr. Heilbrunn said there appeared to be frequent symptom magnification. So the ALJ's finding that Ms. Taylor's statements about her impairments were often magnified and therefore not credible. So the ALJ had substantial evidence in support of his decision to discount the credibility of Ms. Taylor's subjective complaints. And the ALJ also relied on substantial evidence to support his rejections of the opinions or his decision to discount the opinions of Drs. Brown, Lozzi, and Heilbrunn. So what does it mean to give, when he, you know, I always read this all the time in these reports. The undersigned gives some weight to Dr. Brown's opinion. What does that mean? Well, what I think the ALJ meant, if I may, is that this person does have impairments. So at step two, the ALJ did say, yes, there are mental health diagnoses here and they do cause some limitations. But to the extent that this doctor is describing limitations far beyond what are in the residual functional capacity assessment, I can't give great weight to those because I look at the record and I just don't see that described here. So that, I think, is what the ALJ means. Similarly with Dr. Heilbrunn, does she have physical impairments? Yes. Are they to the extent that Dr. Heilbrunn described? No, because several other examining and treating sources said that she either had no limitations or limitations consistent with what the ALJ described. Unless there are any further questions, I'd ask this court to affirm the district court's judgment on the basis of the substantial evidence. Okay. Thank you. Thank you, counsel. Well, let me start by saying it's interesting that counsel for the commissioner tells us what he thinks some weight means. But really, it's the job of the ALJ to tell us what he means by it, and he doesn't tell us. This is important in this case because in... He goes on to say, and I didn't read the second, the next sentence, which was, as stated above, there is evidence that the claimant's anxiety symptoms are minimal. Okay. Well, once again, we dispute that. That statement is simply not supported by substantial evidence. And so that's a problem. Because it's a blanket statement to say... It's further evidence. Because once again, if the ALJ had said there is evidence that shows that sometimes her anxiety gets improved and then other times it's so bad she can't even leave the home, that's the truth. That's indisputable. He didn't say that. He said, no, it's just mild and none. Mild and none, it's not. Sometimes it... I don't even know if it got to the mild, but in any event, it was not mild and none. That statement is false. Palpably false. The issue with Dr. Brown's opinion, the saying, I'm giving some weight to it, is the ALJ never explained clearly why he was rejecting the opinion, Dr. Brown's opinion, that Taylor had marked impairment in her ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting. So he said, I'll give it some weight. But he doesn't say, why are you rejecting that when the evidence showed that that's how she was doing at the time? Now, I won't say as far as the anxiety. The anxiety was worse between about 2007 and end of 2010, 2011. But it hadn't completely abated, but it was getting better. Well, in fact, she testified. She stated that she had gotten better, whether she could get out now, she would feel comfortable going out and doing things. So by her own testimony, there was some evidence of that, was there not? Absolutely. But that, once again, the three years that elapsed in which she had been very dysfunctional, due largely to the anxiety. With regard to the evidence that supposedly contradicts Dr. Halbrun's opinion, first of all, Dr. Bays and Zoltani did their evaluation in 2007. Dr. Halbrun evaluated her in, I believe it was April 2009. It was definitely 2009. So it's so much longer down the road. Dr. Bays and Zoltani could not possibly know what her clinical findings were two years later. So their opinion, based on evaluating mostly her back, and actually they did. They evaluated her carpal tunnel and said, hey, we don't think it's industrially related. We're done with this. They didn't have to say an opinion. They said the carpal tunnel is not industrially related, so we're not going to opine whether it limits her because that's not their role. With regard to the supposedly contradictory evidence from a treating physician, Dr. Johnson, that evidence was from prior to alleged onset date. So yeah, prior to becoming disabled, her hands weren't as bad. She had carpal tunnel, but it wasn't that bad yet. It got worse over time. With regard to... The government can't really explain how it is that you can give significant weight. How do you deal with three doctors, most of whom were treating, who concluded that she overstated her symptoms? I mean, because nobody's arguing that she's symptom-free. Question is, could she do light work? Okay, let's be clear on that. All three of those doctors, none of them were treating. All three of them saw her... They're examiners. They're examiners. All three of them saw her once. Dr. Bays and Zoltani saw her for her worker's compensation claim, were evaluating her back, and she... I have to say, my sense is that at that time, anxiety, which was not analyzed by those doctors, can feed into your complaints of pain. And it could be she was just such a mental mess that that fed into why she came across as someone whose complaints were greater. It could be, but the test isn't whether the evidence could support a greater disability. The question is whether there was credible evidence that could support the ALJ's position. Well... I mean, this is a kind of a credibility determination. Dr. Bays and Zoltani once again evaluated her in early 2007. Dr. Heilbrunn was in 2009. Dr. Heilbrunn, despite finding... And I'm not seeing this exactly in the record, but even assuming he found some symptom exaggeration, he still concluded that her limitation... She had very severe limitations based on positive TNLs and phalanx signs. These tests, these were actual objective tests that he did that showed, that explained why she couldn't use her hands. So basically, she might have been complaining all over the place on anxiety and everything else, but it's not... That's not... He still had his opinion. So the fact that he noticed some exaggeration isn't a valid reason to reject his opinion. Thank you. Thank you.
judges: Ebel, Paez, Bybee